# ILLINOIS CENTRAL RAILROAD COMPANY *v.* LANCASHIRE INSURANCE COMPANY.

1. COMMON CARRIER. *Railroads. Bill of lading. Code* 1892, § 4299. *Evidence.*

   A bill of lading issued by a common carrier, acknowledging the receipt of property for transportation, is, by statute (code 1892, § 4299), conclusive evidence in favor of a *bona fide* holder for value, as against the carrier, that the property was received by it.

2. SAME. *Fire insurance. Recovery over.*

   If, under said statute, a common carrier is liable to and does pay a *bona fide* holder of its bill of lading for cotton destroyed by fire, it can recover over on an indemnity policy issued to it by a fire insurance company, whether the cotton was or was not actually delivered to it by the shipper.

3. SAME. *Contract limiting common law liability.*

   If a common carrier offer a shipper but one contract and one rate, giving him no option, it cannot, by a stipulation in the contract, limit its liability as fixed by law.

4. SAME. *Loss by fire.*

   A clause in a bill of lading providing for the exemption of a common carrier from liability for losses by fire is invalid, where transportation according to the rules of the common law is not offered, as an alternative, and no reduction of rates is given as a consideration therefor.

FROM the circuit court of Clay county.

HON. C. H. CAMPBELL, Special Judge.

The railroad company, appellant, was the plaintiff in the court below; the insurance company, appellee, was the defendant there. The facts are stated in the opinion of the court.

*J. M. Dickinson* and *Mayes & Harris*, for appellant.

As between the holder of the bills of lading and the railroad company, the cotton was conclusively presumed to be in the hands of the carrier. Code 1892, § 4299.

There can be no question, therefore, in this case that the cotton was in the hands of the railroad company for transportation, and the railroad company was an insurer unless it was relieved by the contract of shipment of its common law liability.

The bills of lading each contain the stipulation that the carrier shall only be liable for such loss or damage as is occasioned by wrongful acts or gross negligence on its part. The universal rule now is that a carrier can, by contract, relieve itself of its strict common law liability as insurer, but it is generally held that it cannot, by contract, relieve itself of loss caused by its own negligence or wrongful acts. In this case the loss was not attributable to the negligence of the carrier, but the fire arose from causes entirely beyond its control, and for which it was in no way responsible. We recognize the rule as being settled that the carrier can, by special contract, relieve itself of its common law liability as insurer, and, if there was a contract in this case, then the carrier would not have been responsible to the shipper or owner of the cotton for the loss. But our contention is that, under the agreed state of facts, there was no contract. There was no consideration for the agreement to relieve the carrier of its liability as insurer. It is well settled that agreements of this kind, like other contracts, must have a consideration of some kind to support them. If there is no consideration, it is mere *nudum pactum*, and, therefore, not binding. 4 Elliott on Railroads, sec. 1504; *Newberger* v. *Railroad Co.*, 75 Miss., 303.

Mr. Elliott says: "But the mere receipt of goods and the undertaking to carry, in the absence of such option of reduced rate, is not a sufficient consideration, and no reduction in rate will be made where it is forbidden by statute," citing *Weyhman* v. *Minnesota R. R. Co.*, 58 Minn., 22; *Seybolt* v. *N. Y. & Seaport Ry. Co.*, 95 N. Y., 562–565.

There is no pretense in this case that any option was offered the shipper as to rates; in fact, as to those shipments which terminated within the United States, no option could be offered.

The act of congress to regulate commerce, as amended, March 2, 1886, sec. 6, provides that every common carrier subject to the provisions of the act, shall keep posted its tariffs or charges as fixed from time to time, and that no advance in the tariff shall be made, except upon ten days' public notice, and no reduction shall be made except upon three days' public notice, and that it ''shall be unlawful for any common carrier to charge, demand or receive from any person or persons, a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith than is specified in said published schedules of rates, fares and charges.''

The cotton which was destined to points within the United States out of the State of Mississippi, was shipped on rates fixed in compliance with the '' act to regulate commerce '' as above set forth, and the rates were the published tariffs as required by law. The rates charged for cotton destined to points out of the United States was the regular uniform traffic rate for such shipments under said bills of lading, charged to all parties alike no greater or less rate being in force or charged.

So the court will see that there can be no presumption in the case of any reduction of rate as a consideration for the contract of shipment and, therefore, there was no consideration for the stipulation, relieving the company of its common law liability, hence the railroad company would not successfully plead it in a suit by the shipper or owner of the cotton.

*Green & Green,* for appellee.

There was no delivery of the cotton to appellant under the bill of lading, and for that reason there was no liability of the railroad company. The carrier is not liable '' where the goods remained in the possession of the shipper or his agent after the signing and passing of the bill of lading. *Pacific R'y* v. *McFadden,* 154 U. S., 160. This case is directly in point, and arose under a bill of lading and while the cotton was in

the compress.   The same principles are announced in *Tate* v. *Yazoo, etc., R. R. Co.*, 78 Miss., 842; Hutch. on Carriers, sec. 82 *et seq*; 5 Am. & Eng. Enc. L., 2nd Ed., 181; *Railroad* v. *Insurance Co.*, 139 U. S., 223; *Railroad* v. *Knight*, 122 U. S., 79; *Martin* v. *Railroad*, 55 Ark., 510.   Therefore there was no liability under the bill of lading for want of delivery of the cotton to the carrier.   Code of 1892, § 4299 applies only to *bona fide* holders for value.   It has no application to the status of the property between the original parties.

The fire that destroyed the cotton was not the act of appellant, and for which it was in no way responsible, and, therefore, the fire as to appellant was non-negligent or accidental.

Is a stipulation in a bill of lading, excepting liability from fire, non-negligent or accidental, valid?   There can be but one answer to this.   Carriers can contract against non-negligent or accidental fires.   *Newberger* v. *Illinois, etc., R. R. Co.*, 75 Miss., 303; *Mobile, etc., R. R. Co.* v. *Werner*, 49 Miss., 725; *Southern Ex. Co.* v. *Seide*, 67 Miss., 609; *Chicago, etc., R. R. Co.* v. *Abels*, 60 Miss., 1017; *Johnson* v. *Alabama, etc., R'y Co.*, 69 Miss., 191; *Illinois, etc., R. R. Co.* v. *Bogard*, 78 Miss., 11; s.c. 27 So. Rep., 879, 880, wherein Justice Calhoon says:   "The limit of such contract exemption is against casualties and accidents which prudence cannot foresee."   In *Newberger* v. *Illinois, etc., R. R. Co.*, 75 Miss., 303, the court said:   "It is competent for a railroad company to contract with a shipper restricting its common law liability as an absolute insurer, and exempting itself from liability, for a fire accidental, and as to the action of its employees non-negligent."   *Central R. R.* v. *York*, 3 Wall., 107; Lockwood's case, 17 Wall.; *Phœnix* v. *Erie Co.*, 117 U. S., 322; *Mo. Pac. R'y Co.* v. *McFadden*, 154 U. S., 160; 8 Am. & Eng. Enc. Law (2nd Ed.), 12; 5 Id. 288.   Where the contract calls for a general exemption from liability (as here) by reason of the excepted cause, the exception will be given effect only in cases of an accidental or non-negligent cause.   *Southern*

*Ex. Co.* v. *Seide,* 67 Miss., 609–614; *Chicago, etc., R. R. Co.* v. *Abels,* 60 Miss., 1017; *Chicago, etc., R. R. Co.* v. *Moss,* 60 Miss., 1003. In the case at bar the exception is general as to fire; and it will be interpreted, therefore, as against accidental or non-negligent fires.

Under the facts of this case there would be no liability. In *Yazoo, etc., R. R. Co.* v. *Millsaps,* 76 Miss., 855, the cotton had been delivered to the carrier for transportation, and while it was on the platform of the carrier awaiting transportation, it was destroyed by fire with which the railroad company had no connection, and which, as to it, was non-negligent, and it was held that there was no liability. The case at bar is not so strong in favor of appellant as the Millsaps case, for here the cotton had not been delivered to the carrier, there it had been. *Newberger* v. *Illinois, etc., R. R. Co.,* 75 Miss., 302; *Chicago, etc., R. R. Co.* v. *Abels,* 60 Miss., 1017; *Illinois, etc., R. R. Co.* v. *Teams,* 75 Miss., 147; *Louisville, etc., R. R. Co.* v. *Bigger,* 66 Miss., 319; *Illinois, etc., R. R. Co.* v. *Tronstine,* 64 Miss., 834.

The law of Mississippi is the law of the case. The law of the place of the injury governs. *Martin* v. *Kansas City, etc., R. R. Co.,* 77 Miss., 720; *McMaster* v. *Illinois, etc., R. R. Co.,* 65 Miss., 264; *Chicago, etc., R. R. Co.* v. *Doyle,* 60 Miss., 977; *New Orleans, etc., R. R. Co.* v. *Wallace,* 50 Miss., 244; *Fast* v. *Canton, etc., R. R. Co.,* 77 Miss., 498; *New Orleans, etc., R. R. Co.* v. *Faler,* 58 Miss., 911; *Mobile, etc., R. R. Co.* v. *Weiner,* 49 Miss., 725; *Illinois, etc., R. R. Co.* v. *Haynes,* 63 Miss., 485; *Wharf boat Ass'n* v. *Wood,* 64 Miss., 661; *Illinois, etc., R. R. Co.* v. *Kerl,* 77 Miss., 737.

Appellant's claim that there is no consideration for the contract of limitation of liability is without merit, because no question of the consideration of the contract in this aspect arises on the record. There does not appear a consideration for the special limitation in the record. The presumption is that there was a valid consideration for this contract, and the

burden is on the railroad company to show that its stipulations were without any consideration.  *York Co.* v. *Illinois, etc., R. R. Co.*, 3 Wall, 107; Hutch. on Carriers, sec. 278.

The consideration expressed in the contract of carrier is held sufficient to support the stipulations therein limiting liability. *York Co.* v. *Illinois, etc., R. R. Co.*, 3 Wall., 123; *Louisville, etc., R. R.* v. *Oden*, 80 Ala., 44; *Schiller* v. *Railway Co.*, 97 Wis., 35–37.

In *Illinois, etc., R. R. Co.* v. *Marlett*, 75 Miss., 956, a limitation in a ticket was held valid, when it was applied to all tickets, and this without any proof of any special consideration.

Argued orally by *J. B. Harris*, for appellant, and *Marcellus Green*, for appellee.

HARPER, Special J.,* delivered the opinion of the court.

This case was tried in the court below on an agreed statement of facts.   This agreed statement, in some respects, is meager and unsatisfactory, and we have had some dfficulty in deter mining its legal effect.   But, interpreting it in the light of other evidence in the record and admissions of counsel in their briefs, we think it fairly shows the following facts:   Certain persons deposited cotton with the Shippers' Compress Company, of West Point, Miss., to be compressed for shipment over the Illinois Central Railroad after it had been so compressed, and nothing further remained to be done to prepare it for shipment.   The railroad company issued its several bills of lading on such cotton, all of which was consigned to points in other states of the United States, except one lot, which was consigned to some point in Canada.   These several bills of lading contained a stipulation in these words:  "Such liability to be only for such loss or damage occasioned by wrongful acts or gross negligence of carrier."   The railroad company had

* Judge Calhoon, having been of counsel in the case before his appointment to the bench, recused himself, and W. R. Harper, Esq., presided as special judge in his place.

previously taken out a policy of insurance against loss or damage by fire in the Lancashire Insurance Company, which policy contained a provision describing the property to be covered thereby in these words: "On cotton in bales for which bills of lading have been issued by their duly authorized agents, and for which they shall be liable, while contained in Shippers' Compress, West Point, Mississippi." This cotton, while still in the hands of the compress company, awaiting the pleasure of the railroad company to load it on its cars, and, after the bills of lading had been issued thereon, was destroyed by fire, without any negligence, fault, or wrong on the part of the railroad company. The railroad company, conceiving itself to be liable, paid the value of the cotton so destroyed to the several consignees, who presumably held the bills of lading from the consignors, as evidenced by the several receipts in the record.

Thereupon the railroad company brought this action against the Lancashire Insurance Company, seeking to hold it liable on its contract of insurance for the loss thus sustained by the destruction of the cotton in question. The court below gave judgment for the defendant, the insurance company, and the plaintiff, the railroad company, appealed.

It is contended here, in the first place, on behalf of the appellee, that there was no sufficient delivery of the cotton to appellant to render it liable under its bills of lading. It will be noted that, though the cotton remained in the hands of the Shippers' Compress, nothing remained to be done by the owners to complete the delivery, and the railroad company had only to load it on the cars. The issuance of the bills of lading is, at least, *prima facie* evidence of delivery, and nothing shown in the agreed statement of facts suffices to rebut such presumption. The contract of insurance itself manifestly contemplates just such delivery as was here made, and none other; for, by its terms, it is made to cover only cotton in the Shippers' Compress, and everything looking to a delivery had been

done, except the taking of the cotton out of the Shippers' Compress and loading it on the cars. If the contention of appellee on this point be sound, it is difficult to see how any liability could ever have arisen under its contract. But we think that the record, fairly interpreted, shows that the bills of lading were held by the consignees, who were *bona fide* holders for value; and, if that be true, the question of delivery is controlled by § 4299, code 1892, which provides that bills of lading in such cases shall be conclusive evidence of delivery.

In the next place it is insisted by appellee that the railroad company was not liable for the destruction of the cotton, under the terms of its bills of lading, since they limited its common-law liability as an insurer. It is conceded by the appellant that this contention is correct, if such provisions in the bills of lading be valid and binding under the circumstances of the instant case. It is well settled that, since a common carrier exercises a public employment, it cannot by any act of its own evade the duties imposed on it as such by law. Hence a carrier cannot refuse to carry for a shipper because he declines to enter into a special contract limiting its common-law liabilities. The common carrier must at all times be ready and willing to contract with the shipper on the terms and conditions imposed by law. If the carrier desire to limit its common-law liability, it can only do so by special contract with the particular shipper, freely and fairly entered into, and upon sufficient consideration. If there be but one contract and one rate open and offered to the shipper, and no option or choice be given him, then it seems clear that a special provision limiting its common-law liability under such circumstances is without consideration and void. It was held in the case of *Railroad Co.* v. *Gilbert*, 88 Tenn., 430; 12 S. W., 1018; 7 L. R. A., 162, that a fire clause in a bill of lading exempting the carrier from loss by fire is not valid where transportation according to the rules of common law is not offered as an alternative, and no reduction of rates is made as a consideration for the exemption.

This rule seems to be founded on a wise policy. See, also, *Railway Co.* v. *Cravens* (Ark.), 18 L. R. A., 527; s.c. 20 S. W., 803, and cases there noted. In the instant case, as we interpret the agreed statement of facts, there was but one form of contract and but one rate of freight open and offered to the shipper; that, as to the shipments within the United States, such rate had been approved by the interstate commerce commission, and could not have been changed except by its consent. Under such circumstances, the contract entered into with the shipper by the railroad company limiting its common-law liability as an insurer was without consideration and void. Appellant's liability as to the cotton in question was clear, and, having met the same, it was clearly entitled to recover from appellee on its contract of insurance.

*The judgment of the lower court is reversed, and the cause remanded.*