THOMAS F. LOYD v. KANSAS CITY, MEMPHIS & BIRMINGHAM
RAILROAD COMPANY.

[40 South. Rep., 1005.]

RAILROADS. Carriers. Bills of lading. Code 1892, § 4299. Evidence.
Receipt of goods.

> Under Code 1892, § 4299, providing that a bill of lading shall be
> conclusive evidence in the hands of a *bona fide* holder of the
> receipt of ·the goods therein stated to have been received, a bill
> of lading issued by a railroad company acknowledging the receipt
> ·of a certain number of pounds of cotton is, in the hands of a
> *bona fide* holder, binding on the company and precludes it from
> showing that it did not receive so much cotton.

FROM the circuit court of Lee county.

HON. EUGENE O. SYKES, Judge.

Loyd, the appellant, was plaintiff in the court below; the rail-
road company, the appellee, was defendant there.   From a
judgment in defendant's favor the plaintiff appealed to the
supreme court.   The facts are stated in the opinion of the court.

*Webb & Amason,* and *Brame & Brame,* for appellant.

The appellant was a *bona fide* purchaser for value of the bill
of lading for the cotton that was shipped from Nettleton, Miss-
issippi, which was indorsed in blank by Smith and Coughlan,
who were the shippers of said cotton.   The bill of lading is
within the provisions of Code 1892, § 4299, making bills of
lading issued by common carriers negotiable, or subject to the
. law merchant, in regard to the shipment, delivery, etc., of goods
and merchandise over the lines of common carriers in Mississippi
regardless of whether the point of destination of the goods and
merchandise is in the state of Mississippi or without the state.

The appellee is estopped under and by virtue of the said stat-
ute from denying in this action that it received the amount of

cotton from the shippers at Nettleton, Mississippi, which the bill of lading specified and which was negotiated to the appellant, and paid for by him with a valuable consideration.

It was evidently the intention of the legislature in enacting the above mentioned section, or statute, to cut off all defense against a bill of lading issued by a common carrier in Mississippi for goods and merchandise, when the bill of lading was in the hands or possession lawfully—that is, negotiated in the usual course of business—of a *bona fide* holder of same for value, except fraud or forgery, and perhaps the other recognized exceptions to the liability of a common carrier for non-delivery of the goods and merchandise at the place of destination of same, such as the acts of God, and of a public enemy.

The appellee in this cause is, and was, a common carrier at the time when the bill of lading upon which this cause is founded was issued by it.    This being true, under the rules of the common law which obtained in Mississippi except in so far as the same have been modified, or abrogated, by lawful authority, the appellee, when it received the said cotton for which the bill of lading was issued, as above mentioned, became an insurer of the safe delivery of it to the consignee or the holder of the said bill of lading, at the place of destination named in the bill of lading. The said rule of the common law is laid down in the following language in 5 Am. & Eng. Ency. Law (2d ed.), 233, sub-title VIII, "Liability for Loss or Damage:" "A carrier of goods is liable as a common carrier, and therefore as an insurer, for the safe transportation and delivery of goods entrusted to it for carriage.    This rule of liability is unquestioned, and the only practical questions arising in this connection are as to the exceptions to the rule."

The authorities hold that a common carrier can avoid liability for the damage, or loss, of goods and merchandise received by it for transportation to a place of destination off of its own line, or lines, and where the same must be carried by a connecting carrier in order to reach, or arrive, at the place of destination of

the goods and merchandise so shipped, by limiting its liability
for the carriage of same to its own line, or lines, by entering into
a special agreement, or contract—that is, an express agreement,
or contract, with the shipper of the goods or merchandise to that
effect.   In this cause, the appellee attempts in its statement of
the facts on which it relies for its defense to aver, and set up, a
special contract, as above mentioned, that was printed, either
upon the face, or back, of the said bill of lading that was issued
for the said cotton at Nettleton, Mississippi, and in connection
therewith, states "that the appellee delivered, to the connecting
line, the Southern Railway Company, at Birmingham, Alabama,
fifty bales of cotton, the identical cotton mentioned in the bill of
lading shipped from Nettleton, Mississippi, under bill of lading
dated February 9, 1903, with the marks included in said bill
of lading, said cotton to be compressed at railroad compress, Bir-
mingham, Alabama," and "that this same cotton at the time of
delivery to the Southern Railway Company was in good condi-
tion, and was promptly delivered in pursuance of its agreement
to its connecting carrier with the seal from shipping point un-
opened in the car containing the cotton," and "that the cotton
was compressed at the compress company mentioned in the bill
of lading and afterwards carried over the Southern Railway to
its destination according to its contract."   The above quoted
facts are wholly immaterial and irrelevant, in this cause for that
the special contract, or agreement, that was printed, or stamped,
on the said bill of lading that was issued for the said cotton at
Nettleton, Mississippi, and upon which the appellee relies, is
entirely void, and of no force and effect, as a defense limiting its
liability for loss or damage, of the cotton to its own line, or lines,
of railroad.   63 Am. St. Rep., 219 ; 78 Ala., 597 ; 43 L. R. A.,
140 ; 7 L. R. A., 162 ; 30 South. Rep., 43.

*J. W. Buchanan,* for appellee.

A statement of the case under the pleadings and agreed state-
ment of facts upon which this case was tried, is an answer to

both of the assignments of error of appellant. The bill of lading
attached to the agreed statement of facts, shows that the weight
of the cotton was subject to correction and that the appellee was
not to be liable for any damage or loss to the cotton beyond its
control; and that the bill of lading further contained the words,
"Contents and the condition of the contents of the package
unknown."

The identical cotton received, with the marks and brands
describing the same was placed in cars properly sealed and was
delivered to the connecting line in good condition. This ended
the liability of appellee. It is contended on the part of appel-
lant that appellee's liability only ended at the point of destina-
tion. This court, in the case of *New Orleans, etc., R. R. Co.* v.
*Lambkin*, 78 Miss., 509 (s.c., 30 South. Rep., 47), adopts the
true rule in a case of this character. That a carrier can contract
for nonliability beyond its own line is well settled. Even with-
out a contract limiting the liability beyond its own line, the ini-
tial carrier generally is liable only for losses occurring on its own
line. 6 Am. & Eng. Ency. Law (2d ed.); 615. There is nothing
in this record to show that the relation between the initial line
and its connecting line brought it within the rule stated in the
decision in 78 Miss., *supra*. There is nothing in the contention
of appellant that the appellee was bound for any loss sustained
beyond its own line. We are not advised what happened to the
cotton after it was delivered to its connecting lines. The law of
the liability of the initial and connecting carriers is too well set-
tled in this state for argument.

We submit that the only question in this case under pleadings
and the agreed statement of facts is, did the carrier who issued a
bill of lading of the kind shown in the proof, guarantee the
weights of articles mentioned in the bill of lading?

The object of the statute of Mississippi under construction to
protect holders of bills of lading wherein the bill of lading
recited that certain articles had been received when in fact they
had not. It had been the practice of carriers to issue bills of

lading for goods or commodities not in its possession and by the issuance of such bills of lading, many innocent holders had been defrauded.

The agreed statement of facts shows that carriers of cotton never weighed the same, but always made an estimate of the weights for the purpose only of fixing the amount of freight to be charged. The purchasers of cotton for mills and for foreign shipments know such customs as well as the carriers of the same.

To put the construction on the statute urged by appellant's counsel would revolutionize the whole system of handling the great product of the South, as it would require in the cotton season double the force now required at each station; besides, is is common knowledge that the weight of cotton is as variable as the weather.

Cotton is handled by the bale with peculiar marks and brands of the owner, and not by the weight of the same.

WHITFIELD, C. J., delivered the opinion of the court.

Appellant sued appellee for $835 damages for failure to deliver to him, at Chapel Hill, North Carolina, 24,520 pounds of cotton, for the transportation and delivery of which, from Nettleton, Mississippi, to Chapel Hill, North Carolina, appellee had issued its bill of lading, acknowledging receipt of said number of pounds. This case was tried on an agreed state of facts by the court without a jury. The only facts which we deem it necessary to notice are as follows: The appellant prepaid the whole amount of the freight as on a through rate from Nettleton, Mississippi, to Chapel Hill, North Carolina, and the appellee received the amount of freight based upon the number of pounds (24,520) set out in its bill of lading as having been received by it. In other words, it was paid in full, in advance, for the transportation and delivery of 24,520 pounds of cotton. The railroad did not weigh the cotton, as it might very easily have done, when it received it at Nettleton. The bill of lading was indorsed by Smith & Coughlan in blank. Smith & Coughlan sold the bill.

of lading while the cotton was in transit to the appellant, Loyd, and drew a draft on Loyd for the sum of $2,257.77, which was the purchase price of the said bill of lading for fifty bales of cotton, weighing 24,520 pounds. Smith & Coughlan attached the said draft to said bill of lading, and forwarded the same to the Bank of Chapel Hill for collection; and upon presentation of the same by said bank to Loyd, he, at sight, paid said bank the said amount, $2,257.77, and received into his possession the bill of lading. When the fifty bales of cotton arrived at Chapel Hill, North Carolina, they were weighed and found to weigh 16,752 pounds, leaving the large shortage in weight of 7,768 pounds. From this fact it is perfectly obvious that the shortage could not possibly be due to shrinkage, or to any of the usual causes. The railroad company, in other words, manifestly never received, as a fact, 24,520 pounds of cotton; but it expressly took upon itself the liability of accounting for that amount, since this bill of lading was executed with full knowledge of the existence of sec. 4299 of the code of 1892, which is as follows: "Every bill of lading, or other instrument in the nature or stead thereof, acknowledging the receipt of property for transportation, shall be conclusive evidence, in the hands of a *bona fide* holder, for value, whether by assignment, pledge, or otherwise, as against the person or corporation issuing the same, that the property had been so received."

The case of *Illinois R. R. Co.* v. *Lancashire Ins. Co.,* 79 Miss., 114 (s.c., 30 South. Rep., 43), is conclusive against appellee, that it must respond for the number of pounds, which, by its bill of lading, it acknowledged it had received, since the deficiency is clearly not one due to any shrinkage, or ordinary loss of weight, but to the fact that the company never received it at all. Mere loss from shrinkage would not be affected by the statute named, but a substantial large loss, like the one in the case at bar, the carrier must respond for under this section, as held in this case, and as foreshadowed in the case of *Hazard* v. *Illinois Cent. R. Co.,* 67 Miss., 32 (s.c., 7 South. Rep., 280). It was very dis-

tinctly announced by the court in this last case that this section is not "a mere rule of evidence, but has the design to change the character and legal effect of the contract evidenced by a bill of lading." Learned counsel for appellee refers to a case from the supreme court of Alabama as his chief reliance, but an examination of sec. 4223 of the code of Alabama of 1896 shows that that section has no provision making a bill of lading "conclusive evidence" of the receipt by the carrier of whatever the bill of lading recites to have been reveived. That case is therefore not in point here under our statute.

Very much is said in argument about the alleged invalidity of the provisions in the bill of lading, as that the initial carrier shall not be liable beyond its own line for any loss or damage occurring, etc., and that the shipper shall be bound by all the conditions, limitations, etc., in the bill of lading, stamped or written, etc. Since it is a part of the agreed case that the identical fifty bales of cotton delivered to the carrier at Nettleton, Mississippi, were also safely delivered to Loyd at Chapel Hill, North Carolina, all this discussion is quite beside the mark. There was no loss or damage between the point of shipment and the point of destination. The only question in the case is whether the carrier is bound conclusively by the statement in the bill of lading that it received, and was to transport and deliver, 24,520 pounds of cotton as in the bill of lading stipulated. We have already decided that the liability is absolute, and now reaffirm that doctrine, under Code 1892, § 4299.

It follows that the judgment rendered by the court below must be, and is, hereby reversed, and a judgment will be entered here in favor of the appellant for the sum of $795.22, with interest at the rate of six per cent per annum from the 9th day of February, 1903, to this date, and all costs. So ordered.

*Reversed.*