RAILWAY CO. *v.* CRAVENS.

Opinion delivered December 24, 1892.

*Carrier—Limitation of common-law liability.*

> A carrier cannot by special contract limit its common-law liability for losses not occasioned by its negligence where it does not afford the shipper an opportunity to contract for the service required without such restriction ; and it is immaterial that the shipper knowingly accepted a bill of lading containing such restriction, without demanding a different contract, if he knew that the carrier's agents had no authority to make any other contract with him.

Appeal from Johnson Circuit Court.

JEREMIAH G. WALLACE, Judge.

W. L. Cravens brought suit and recovered judgment against the Little Rock & Fort Smith Railway Company and the Missouri Pacific Railway Company. The case is stated in the opinion.

*Dodge & Johnson* for appellants.

1. Common carriers have the right to limit their common law liability by express contract, and the fire exemption clause is recognized as valid in the courts of this State and the United States. 32 Ark. 399 ; *ib.* 670 ; 39 *id.* 148 ; *ib.* 529 ; 44 *id.* 209 ; 46 *id.* 243 ; 47 *id.* 103 ; 50 *id.* 412 ; 52 *id.* 30 ; 6 How. 344 ; 17 Wall. 357 ; 22 *id.* 594 ; 16 *id.* 318 ; 21 *id.* 267 ; 8 *id.* 342 ; 93 U. S. 174 ; 112 U. S. 337 ; 6 A. & E. R. Cas. 351 ; 9 A. & E. R. Cas. 174.

2. The contracts on their face disclose a valid and reasonable consideration moving from the carriers to the plaintiff, which carried with them a right to limit the carrier's liability, and this was not overcome by any evidence introduced at the trial. 110 U. S. 667–680; 25 Md. 72; 41 Fed. Rep. 562; 3 Inter-state Com. Rep. 10; 54 Ark. 403. The guaranteeing a *through* rate and the contract to deliver beyond the company's own line, thus assuming a liability for connecting carriers, was a sufficient consideration for a contract limiting the liability as a common carrier. 47 Me. 590; 4 P. F. Smith, 82; 18 *id.* 277; 22 Wall. 601; 16 *id.* 324; 42 Vt. 568; 45 N. Y. 530; 104 Mass. 135; 49 Vt. 265; 4 McCrary, 405; 19 Wis. 137; 54 N. Y. 502; 7 H. L. Cas. 213; 52 Ill. 129; 3 Fed. Rep. 768; 13 Gray, 481; 115 Mass. 304; 49 Ark. 354; 49 N. Y. 495; 61 Penn. St. 86; 45 N. Y. 517; 46 *id.* 278; 4 Am. L. Reg. 234; 48 N. Y. 506; 15 Minn. 270; 98 Mass. 239.

3. If the shipper received a fair and reasonable consideration, either in reduction of rates or guaranteed through rates or guaranteed through rating to destination, it matters not what was the form of the written contract, it must stand and govern between the parties. Authorities *supra*. The instructions on this were misleading. 100 Mass. 506; 50 Ark. 406.

*J. E. Cravens* and *J. M. Moore* for appellee.

1. When a railroad company gives its customers no choice as to whether they should ship with or without the exemption, the acquiescence of the shipper in the form of the bill of lading containing the exemption clause does not establish the reasonableness of the exemption. 12 S. W. Rep. 1018; 17 Wall. 357. It must appear that the shipper knew the contents of the bill of lading and assented thereto. 89 Ill. 43; 91 *id.* 195. The acceptance by the consignor of a bill of lading containing stipulations

against liability, which are invalid for want of consideration, will not bind and preclude him from showing the want of consideration. 2 Lea, 288; 3 Wall. 112. The proof in this case shows that appellee had no choice, and that there was no consideration for the limited liability. 1 Cent. L. Jour. 186; 50 Ark. 405; 39 *id*. 157; 3 Wall. 112.

2. The duties of railways as to through rates and routing on shipments beyond their lines, and their powers in restricting their liability as carriers, were materially modified by Acts of 1885 and 1887. 49 Ark. 291. The performance of an act which a party is under a legal obligation to perform does not constitute a good consideration for a promise. As a common carrier is bound to carry when requested, the mere agreement to carry does not furnish a contract in derogation of his responsibility at common law. Nor does his agreement to carry for the price which he might charge in case his liability was not limited, or which it was his custom to charge in such cases. Lawson's Cont. of Carriers, sec. 212.

HEMINGWAY, J. The plaintiff sued to recover the value of cotton that was burned without fault of the defendants, while they held it for shipment.

The defense was that the defendants were exempt from liability by the terms of the bills of lading under which they received the cotton.

It was alleged in the complaint and admitted in the answer that the defendants operated a line of road from Hartman, where the cotton was received, to the several points of consignment, and that they received the cotton under bills of lading containing provisions to the effect that they should not be liable except for losses occasioned by their negligence; but it was alleged that said provisions were void, for the reason that they were without consideration, unfair, unjust and unreasonable.

To maintain his contention, plaintiff proved that the defendants fixed and published a uniform rate for carrying cotton between said points, and that his shipments were made according to that rate; that the defendants furnished to their agent at Hartman printed forms for bills of lading that were uniform in their terms and contained the provisions relied upon in this case; and that said agent had no authority to receive and would not have received the cotton, except under said bills. It is shown that the plaintiff knew that the bills contained the provisions relied upon, and that he made no objection to the rate fixed or the provisions contained therein. There were other facts proved, but, as we understand the law, they do not affect the case made.

There was no serious controversy as to the amount of plaintiff's loss, and it is not now insisted that the verdict was excessive.

The contention is that the court erred in directing the jury upon the law regulating the provisions of the bills of lading providing for defendants' exemption from their common law liability; and no objection is made to its directions upon other principles of law. We deem it unnecessary to set out or consider *seriatim* the several instructions, for in stating our views of the law we determine all questions arising upon them that are material in this case. If upon the case stated the provisions are deemed valid in law, the defendant has a perfect defense, and the action should be dismissed; on the contrary, if the provisions are deemed invalid in law, the defendants have no defense, and no error in the court's charge could have prejudiced them—that is, the judgment should be reversed or affirmed according as the contracts are deemed valid or invalid.

It is contended that they were invalid because they were without consideration, but we have not deemed it necessary to enter upon the consideration of this question.

The further objection urged to them is that they were unfairly obtained, and are therefore unjust and unreasonable in the eye of the law.

To maintain this position it is argued that the plaintiff had an absolute right to demand that defendants receive and carry his cotton under their accountability at common law, but that he could procure them to do it only by accepting the bills offered ; and that for this reason his agreement to the conditions of the bills was not fairly obtained, and they should be adjudged unjust, unreasonable and void.    To this the defendants reply that there is nothing to show that the terms of the bills were unjust or unreasonable, and that, as plaintiff understandingly accepted them, he is conclusively bound by them.

There are principles of law pertinent to the case that are well settled, among which may be stated the following :    That a carrier is bound to receive and carry all articles tendered him of the kind that he engages in carrying; that in performing that service the law casts upon him the accountability of an insurer, unless he undertakes the service in the particular case under a special contract with the shipper restricting his liability; that the carrier can by no act of his own modify his liability, but that every modification must arise out of a contract, fairly made and just and reasonable in its terms.

It follows, from the principles stated, that the law deems it just and reasonable to hold the carrier to the duty of carrying with the accountability of an insurer if the shipper so wish, so that the carrier can neither decline to perform the service, nor, of his own motion, escape that extreme accountability.    He is authorized to contract with the shipper for a restricted liability, but such restriction depends upon the consent of the shipper. He has the right of choice between the common law

undertaking and any special contract that the carrier may wish to make, and the making of a modified contract must represent his choice.   But although his consent is an indispensable element in such a contract, it is not conclusive of its validity; for the law will permit the carrier to be released from his common law liability, not upon every contract to that effect that would be valid if it related to other matters, but only in pursuance of a contract fairly made, the terms of which are deemed just and reasonable.   So that while a carrier claiming an exemption must show a contract providing for it, even this will not avail him if it appear to be unfair, unjust or unreasonable.

Whether the agreement relied upon in a particular case satisfies the requirement of the law as regards its terms and the manner of its procurement must be determined in view of the rights and duties of the parties, the policy of the law in defining them, and the tendency of the contract to conserve or to violate such policy.

If an intending shipper should be refused transportation because he would not make a special contract, he might desist from shipping and hold the carrier for damages.   Of this there can be no doubt, and we do not understand that defendants question it.   If it were otherwise, the carrier could refuse to perform a service, the performance of which is its primary duty, and justify upon the ground that its intending customer declined to release it from a liability which the wisdom of the law imposes on it; and while the law will not permit it to restrict its liability, it would thus recognize a restriction due to what, viewed practically, was no less than its compulsion.   This in effect would authorize it to abrogate a rule of law designed to hold it to a discharge of its duties, and the law does no such foolish thing as prescribe regulations and vest the party to be regulated with the right to repeal them.

Taking it to be settled that a refusal to carry except upon such condition is a wrong, and that one intending to ship, who declines to do it upon such terms, has a right of action for his damage, we are next to consider what his attitude is if, instead of declining to ship upon the condition, he elects to ship and accedes to the condition in order to obtain transportation.

The law, as we have seen, deems it the best policy that the carrier should bear the general liability of an insurer, except where his customer consents to bear a part of the risk, in which case it seems to contemplate that the terms upon which such consent is given will guard and preserve the public interest. But the consent meant is certainly not a constrained submission to terms imposed ; not a consent extorted by what the law characterizes as duress, nor what is practically, as society is organized, the same thing ; but it is what Mr. Pomeroy calls an "absolute consent"—a consent that implies a physical, intellectual and moral power, freely and deliberately exercised. Consent of a different kind may be, and often is, all that is required to make a contract binding at law and even in equity; but it cannot make a contract fair, just or reasonable. As a rule, the validity of a contract in no wise depends upon its fairness, nor the justness or reasonableness of its terms, nor the adequacy of the consideration, provided it rests upon one deemed valuable ; nor will it be invalidated by reason of the fact that the party was in pecuniary or other necessity or distress, provided it was intelligently and freely made, without the use of undue pressure. If the party freely and intelligently elect to make a hard, unequal and unjust contract, the courts will not make a better one for him, or relieve him of the one made, merely because he was in straitened circumstances and it seemed to him necessary to make it in order to secure relief. The courts decline to thus hamper the independence of the

individual or limit his right to make his own contracts, such functions pertaining to paternal and not to free government. But relief is withheld upon the ground that the party had his choice between not acquiring the benefits accruing under the contract and acquiring them according to its terms, and had intelligently and freely exercised his choice and elected to take the benefits of the contract. The reason does not apply where the party acquires nothing under the contract, and is constrained to consent to it by reason of the fact that the other party had made this agreement necessary to the enjoyment of an important and apparently indispensable privilege to which he was already entitled. But even when a party, by an unequal or unjust contract made without duress or misrepresentation, acquires something to which he had no other right, courts of equity have shown a disposition to relieve the other party where it appeared he was in pecuniary necessity or distress that impelled him to make an undue sacrifice, and advantage was taken of such condition. 2 Pom. Eq. sec. 948; *Buford* v. *Railway Co.* 82 Ky. 286; *Brown* v. *Hall*, 14 R. I. 249; 1 Whart. Cont. sec. 170.

Upon this principle, contracts to pay unconscionable interest where no usury laws are in force, and to transfer expectant estates for considerations grossly inadequate, have been declared void. *Miller* v. *Cook*, 10 L. R. Eq. Cas. 641 and cases *supra*.

Without committing this court to the doctrine of those cases to the extent of holding that an advantage taken of one's necessities or distress to obtain a hard bargain will afford ground for equitable relief, we think it necessarily and properly deducible from them that it is not fair, just or reasonable in the eye of the law to take advantage of one's necessities or distress to obtain a contract by which he releases some valuable right or assumes some onerous liability—at least where it does

not appear that he received any corresponding benefit; and that while the circumstances might not warrant the avoidance of an ordinary contract, they would defeat such a one as depends for its efficacy upon its fairness, and the justness and reasonableness of its terms.

Applying the principle stated to this class of cases, the question is, whether it can be declared as a matter of law that an intending shipper is under a necessity to agree to a special contract which the carrier proposes as a condition to receiving and carrying his property; and if so, whether it can be further declared that the carrier takes an unfair advantage of his necessity to obtain the contract.

It is a well known fact that the prosperity of the public collectively, and of its members individually, depends absolutely upon transportation and transportation agencies. And that the carrying business is mostly concentrated in a few powerful corporations, to a large extent controlling monopolies, natural if not legal, whose position enables them to control it. Circumstances, well understood, that exist without any design of the law, give them the power to shape the carrying business and impose upon it such conditions as they see fit. Every demand they make represents the will of their aggregate being, backed up by all their concentrated powers. The public, in meeting such demands, act separately and not collectively. The individual stands alone and can oppose, to the demand coming from such concentration of corporate power, the influence of but one member of the vast aggregate that comprises the public. Whether he gives the carrier his patronage or does not, matters but little to the latter; but whether the carrier transports his property promptly and safely will perhaps determine whether he succeeds or fails in business. If he declines the terms proposed and refrains from shipping, he has no adequate redress. If he sues to recover his damage, he is subjected to all the delay and expense incident to

such litigation, and at last recovers only what the law regards as his damage, and must himself stand, what would generally be much greater, the loss which the law deems too remote to estimate as damage. If he withhold his patronage and attempt by this means to induce the carrier to recede from his terms, he can accomplish nothing ; for his business is too small to make his patronage material, and, besides, if his property is to be transported, he must at last deliver it to the exacting carrier ; for, from the nature of the business, he can rarely find any other. So that he would only have postponed giving his patronage, and the delay in shipment, that may have been very detrimental to his business, would not be appreciable to the carrier. In considering the relative positions of the parties, Judge Bradley thus states his attitude : '' He is one individual of a million. He cannot afford to higgle or stand out and seek redress in the courts. His business will not admit such a course. He prefers rather to accept any bill of lading or sign any paper the carrier presents ; often, indeed, without knowing what the one or the other contains. In most cases, he has no alternative but to do this or abandon his business.'' *Railroad Co.* v. *Lockwood*, 17 Wall. 379.

The Supreme Court of Michigan, with reference to the same subject, thus defines the attitude of railroad companies : ''They do, and necessarily must, absorb nearly the entire business of carrying merchandise and property requiring carriage and deposit along and in the vicinity of their route, and competition is virtually destroyed. There is, in a certain sense, a compulsion upon all requiring transportation to employ them ; and a restriction of liability by notice is measurably compulsory. There is no mutuality or freedom of choice offered. The person desiring to have goods forwarded is compelled in reality to have them carried forward by the company; their obligation is to carry them ; and a restriction of

the liabilities primarily growing out of that obligation, by a notice, is an imposition of terms rather than a contract." *Mich. Cent. R. Co.* v. *Hale*, 6 Mich. 258. See *L. R. & F. S. R. Co.* v. *Eubanks*, 48 Ark. 460.

Why, we would ask, is restriction by express agreement, if necessary to obtain transportation, less compulsory, less an imposition of terms, or more in the nature of a contract? The unequal condition of the parties is the same in either case; the necessity of the one to obtain transportation and the control of it by the other exist in either case; the only difference between the agreement by notice and that by writing in the bill of lading is that in the one case consent is implied and in the other express, but in either case the party is bound to give it in order to enjoy a privilege of great, and possibly vital, financial importance to him. The agreement in neither case embodies the free and deliberate consent of both parties, for one did what he felt bound to do, while the overmastering influence of the other enabled him to embody his will in a formal contract.

The relative position of the parties must be well understood by both of them—by the individual desiring to ship property and the carrier to whom it is offered. The individual feels that transportation is necessary to his success, and that unless he gets it promptly he will suffer inconvenience and perhaps loss; he regards the probability of loss in transit as remote, and knows that if there is no loss the contract is immaterial. Under such circumstances he will assume the risk of contingent future loss, rather than sustain a loss that is certain and present—as men usually are prone to sacrifice contingent future interest to satisfy present wants. So we think it should be held, as a matter of law, that the parties stand upon a footing of inequality, and that individuals desiring to make shipments are under a necessity sufficient in the ordinary affairs of life to amount to com-

pulsion, where it is pressed; the question then is, whether, in the case stated, a carrier, in making agreements exempting him from his common law liability, takes an unfair or unjust advantage of the situation and of his customers' wants.

The answer seems plain, in the light of what has already been said. The service is in fact an absolute necessity to the individual; the carrier is by law bound absolutely to perform it. It affects as well the public interest as that of the individual, and the law regulating it, recognizing the unequal footing of the parties, has regard alike to both interests. Great and valuable powers and privileges are conferred upon the carrier, and in return for them, out of regard for the general good, the law exacts that he shall promptly perform it without damage to property committed to him. He accepts the grant upon those terms, enjoys its benefits and thereby acquires a controlling influence in the body politic, and then declines to perform the service, except upon the condition that he be released from the accountability he assumed. That is, he will perform the service only upon the condition that his customer carry a risk which, except where his customer prefers to carry it, the wisdom of the law has imposed upon him. This is a plain dereliction of a public duty; and it is a wrong to the customer, since it deprives him of the right to have the service and to choose whether it be performed at one price, without risk to him, or at another price partly at his risk.

But it is said that if the party knowingly consent to a special contract, no one else can object, and that he cannot be heard to say that it was unfair or that an advantage was taken of him, since he acted freely and intelligently. This, as we have seen, is a mistake, for such contracts affect the interests of the public and are subject to public regulation; and, besides, the circum-

stances do not warrant the assumption of fact that the party consented freely, but rather show that he submitted to terms that he was bound to accept, when the other party deprived him of the opportunity to choose between them and the contract which the law entitled him to demand. For he was, as we have seen, as much entitled to be indemnified against loss in transit as to the service demanded.

The law imposes no necessity for an election between the two rights, and the carrier can impose none. But the carrier's refusal to perform the service without a release of his liability takes away the right to choose, which the law gives, and forces an election between rights that are not inconsistent. Thus the carrier does a wrong and thereby creates a necessity for the wronged party to give the consent relied upon; and the question is, whether one who does a wrong, that places another under the necessity of agreeing to his proposals, takes an unfair or unjust advantage in the matter. It is the tyranny of power over dependence, and therefore unfair; the deprivation of a right, and therefore unjust. The reply that the party knowingly consented under circumstances not constituting duress or fraud, and that this is conclusive against him, is not sufficient in law. If it were, a contract knowingly made to release a carrier from liability for his negligence would be sustained, but we know that the law is otherwise. It overlooks two important features of this class of contracts; the first, that the individual is at a disadvantage in dealing with the carrier, and is bound by force of circumstances to accept whatever terms are offered because he has no reasonable or practicable alternative; the second, that such contracts affect the interests of the public, on account of which the law will suffer them to be made only when they are fair, just and reasonable.

In this case the plaintiff did not object to the contract proposed or ask for a different one ; but if he had, the agent could not, and would not, have entered into any other. Does this affect the case ? We think not, but that the case stands just as if the plaintiff had demanded a different contract and agreed to the one accepted because he could get no other. Carriers do their business in pursuance of a general plan, and of this the public are advised, and when the defendants adopted a plan, and instructed their agent to pursue it, and authorized him to pursue no other, their customers were not called upon to ask a change of the plan, or a departure from its terms, in their particular matters ; they had a right to suppose that the agent would not deviate from his instructions, and the evidence shows that in this instance he would not. *Heiserman* v. *Burlington, etc. Railway Co.* 63 Ia. 736. Besides, if defendants prepared to do business upon one plan only, it should have been in accordance with their common law liability ; the public had a right to that service, promptly performed, and should not have been subjected to any delay incident to preparing to do it, or instructing agents with regard to it. If any customer were to be delayed, such as desired service under special contracts, and not those who desired it under the common law contract, should have been subjected to the inconvenience.

The case may be stated as follows : The defendants were bound to accept and carry the cotton as insurers ; they prepared to do it, and authorized their agent to do it for them, only upon condition that they be exempt from such liability ; and the plaintiff, being able to make no other contract for the carriage of his cotton, agreed to the one proposed. They contend that though the law prescribes that such contracts shall be fair, just and reasonable, the party's making it is conclusive as to those matters, in the absence of fraud or duress as defined by

law. We do not assent to the position, but hold that, to maintain the policy of the law with reference thereto, such contracts must be the free act of the party and reflect his choice as between the contract to which the law entitles him and the one relied on. One which it was necessary for him to make, by reason of his circumstances and the carrier's refusal to make any other, is not fair to him, and would not be deemed just or reasonable in law—at least without a showing that its terms really conserved his interest.

In other words, we think it would violate the policy of the law to permit contracts to be made restricting the carrier's common law liability, where the carrier does not afford his shippers an opportunity to contract for the service without such restriction. It may be that shippers would prefer cheaper service with restricted accountability to more expensive service with unrestricted accountability; but they are entitled to a choice, and the carrier cannot deprive them of it, either directly or by anything which amounts practically to its deprivation. In support of this conclusion, we cite the case of *Louisville, etc. R. Co.* v. *Gilbert*, 12 S. W. 1018. But if we were without a precedent, we think the established principles and policy of the law could not be maintained upon a different conclusion. If carriers could maintain exemptions where the opportunity to make a contract without them was not afforded, the result would be that such contracts would be universal; and it would be better to state the law generally, as it would in fact be in every case, that the carrier was only liable for his negligence. But the law has, in its wisdom, established a different rule, which it is the duty of courts to conserve, rather than overturn. It follows, upon the views indicated, that the contracts relied upon are invalid, and the judgment is therefore affirmed.*

---

* The principal case is annotated in 18 L. R. A. 527. (Rep.)