Railroad *v.* Craig.

*\* RAILROAD *v.* CRAIG.

(*Jackson.*     April 15, 1899.)

1. COMMON CARRIER.   *Limiting common law liability.*

    The common law liability of a carrier is not affected by the issu-
ing and delivery to the shipper of a bill of lading limiting the
carrier's liability after the shipment has commenced. (*Post,
pp. 300, 301.*)

2. SAME.   *Same.*

    A common carrier may, by stipulation in its bill of lading, limit
its common law liability for loss or damage of freight not
caused by its own negligence, but it cannot do so unless it
gives the shipper, at the time, the opportunity to elect, upon
just and reasonable terms, between the limited and the full
liability of the carrier. (*Post, pp. 301, 302.*)

Cases cited: Railroad *v.* Gilbert, 88 Tenn., 430; Railroad *v.* Man-
chester Mills, 88 Tenn., 653; Railroad *v.* Sowell, 90 Tenn., 17;
57 Ark., 112 (S. C., 18 L. R. A., 527); 39 Ga., 117 (S. C., 99 Am.
Dec., 474).

---

FROM   DYER.

---

Appeal in error from the Circuit Court of Dyer
County.   THOS. J. FLIPPIN, J.

DRAPER & RICE for Railroad.

W. W. CRAIG for Craig.

\* The authorities on the right of a common carrier to limit common law liability
by contract in the absence of negligence are collected in a note to *Little Rock & Ft.
S. R. Co. v. Cravens* (Ark.), 18 L. R. A.. 527.—REPORTER.

Railroad v. Craig.

CALDWELL, J. J. R. Craig obtained a verdict and judgment against the Illinois Central Railroad Co. for the sum of $250, as damages for injury to his soda fountain while being transported over the defendant's line of road from Dyersburg to Obion Station. The injury to the soda fountain consisted in the breaking of its valuable and indispensable marble parts into numerous small and worthless pieces. At the trial below the company sought to introduce before the jury a bill of lading under which it claimed the shipment was made, and which recited upon its face, in explicit terms that the company would not, in any event, be liable for loss or damage resulting from the breakage of marble. The refusal of the trial Judge to permit the introduction of that instrument is the principle ground on which the company asks a review and reversal of the lower Court's action. The proposed evidence was rightly rejected and withheld from the jury. The goods were, in fact, shipped without a bill of lading of any kind, and the paper in question did not contain the real contract of shipment or shed any true light upon it. This paper was issued after the transit had been completed and the damage done, and that, too, without any knowledge on the part of the shipper of a purpose or desire on the part of the company, at any time, to limit its common law liability in any manner whatever.

When the goods were delivered to the company at Dyersburg, and by it there accepted for trans-

portation, its agent at that place was engaged in the
sale of tickets for a passenger train soon to go by,
and, for that reason, he could not then issue a bill
of lading.  He told Craig, who, with others, took
passage on that train, that the goods would be prop-
erly shipped, and a bill of lading forwarded to him.
Nothing was said by either party about the form or
terms of the instrument to be issued, nor did Craig
know of the company's custom to limit its liability
in the transportation of that class of freight.  He,
in fact, thought that a bill of lading was a mere
receipt for the goods to be shipped, and that such
would be the instrument agreed to be forwarded.

After the soda fountain reached its destination
and was discovered by Craig to be in a dilapidated
and ruined condition, he procured a friend at Dyers-
burg to call on the company's agent there for the
promised bill of lading or receipt, and, on the re-
quest of that friend, the paper here in question
was made out and delivered to him, and by him
sent to Craig.  Soon thereafter, and without in any
manner ratifying the terms of the bill of lading so
furnished him, Craig notified the company of his
damage and demanded full and unconditional indem-
nity therefor, and upon the company's failure to
make payment he brought this action.

From this brief statement of the attendant facts
it is entirely manifest that the present shipment was
made without a bill of lading of any kind and
without a contract limiting the company's responsi-

bility, and consequently that the trial Judge ruled correctly when he excluded from the consideration of the jury the instrument subsequently issued as a bill of lading and sought to be introduced by the company as a contract for limited responsibility. Moreover, though it were conceded that this paper was in fact issued before the transportation of the goods as a bill of lading therefor, it would, nevertheless, be invalid in so far as it provides for limited liability. This would be so, because the shipper was not offered, and could not have obtained, a reasonable and *bona fide* alternative between conditional and unconditional liability on the part of the company for injury that might happen to his goods, but must have accepted the bill of lading in its present form and terms or not been allowed to make the shipment at all. The agent who issued this paper, while testifying before the jury on behalf of the company, said that it was ''the usual and only bill of lading issued to shippers of the kind of freight that the plaintiff shipped on that occasion,'' and that ''he would not have shipped the fountain for the plaintiff if he had refused to accept a bill of lading in that form and in the terms of that one.''

It is well settled that a common carrier may, by a stipulation in its bill of lading, limit its common law liability for loss or damage of freight not caused by its own negligence. But this cannot be validly done unless the carrier, at the time, holds

itself in readiness to transport the freight with or without such limitation and allows the shipper a reasonable and *bona fide* alternative between the two modes of shipment. *Railroad* v. *Gilbert, Parkes & Co.*, 88 Tenn., 430; *Railway Co.* v. *Manchester Mills, Ib.*, 653; *Railway Co.* v. *Sowell*, 90 Tenn., 17; *L. R. & Ft. S. Ry. Co.* v. *Cravens*, 57 Ark., 112 (S. C., 20 S. W. Rep., 803, and 18 L. R. A., 527); *Wallace* v. *Mathews*, 39 Ga., 117 (S. C., 99 Am. Dec., 474; 4 Elliot Railroads, Sec. 1504; Ray's Neg. Imp. Dut., 45, 48, 181; Redman's Law Ry. Carriers (2d Ed.), 66.

The company sued in the present case does not bring itself within the imperative requirement of this rule. On the contrary, it affirmatively shows by the testimony of its agent, just quoted, that it used but one bill of lading for this class of freight, submitted no alternative to the plaintiff, and would not have shipped his goods at all if he had refused to accept its bill of lading providing for limited liability. Such a provision, so obtained, was necessarily invalid, and, being so, it was not competent evidence for any purpose.

The several other matters urged against the judgment of the Court below have been thoroughly considered and will be treated orally from the bench without specific mention in this opinion. None of them are of such nature as to stand in the way of an affirmance, which is ordered.