Hillsborough, }
  Dec. 4, 1906. }

### BAKER *v.* BOSTON & MAINE RAILROAD.

A common carrier of milk is bound, in the full performance of its public duty, to provide reasonable facilities and accommodations for the reception and delivery of the commodity, including care during transportation.

The question whether facilities and accommodations furnished by a railroad company to a shipper constitute a reasonable compliance with the carrier's public duty is one of fact.

A contract whereby a shipper of milk agrees to provide men to care for the commodity during its transportation and to indemnify the carrier against claims for personal injuries sustained by such employees is unreasonable and void, if an opportunity for transportation according to the carrier's full duty has not been afforded the shipper as an alternative and no reduction of rates has been made as a consideration for the limitation of liability.

An agreement between a shipper and his employee engaged to care for freight during transportation, which provides that the latter shall not prosecute any suit against the carrier for personal injuries received during his employment and which is based upon an invalid indemnity contract between the employer and the carrier, is not available as a defence to an action by the employee for injuries resulting from the carrier's negligence.

CASE, for negligence. Transferred from the January term, 1906, of the superior court by *Stone*, J. The questions of law are raised by the plaintiff's demurrer to the plea or brief statement filed by the defendant, the material parts of which are as follows:

"At the time of the collision in the declaration complained of, the defendant, a corporation duly established by law and operating a railroad between various points in the states of New Hampshire and Massachusetts and elsewhere, was engaged in hauling for D. Whiting & Sons of Boston, Massachusetts (the firm in the declaration mentioned), certain special cars furnished by the defendant for the sole use of said firm in the carriage of milk, accompanied by certain of the firm's employees, from various points in New Hampshire to Boston aforesaid, over lines of railroad operated by this defendant, said employees riding in said cars for the purpose of taking care of and handling the milk and performing work incidental thereto for said firm. The car in which the plaintiff was at the time aforesaid was being so used by said D. Whiting & Sons, and solely for their accommodation, and the same was one of said special cars; and the plaintiff was then riding therein as one of their said employees. The defendant, in furnishing and hauling said cars as aforesaid, was engaged in performing an agreement between itself and said D. Whiting & Sons, entered into upon the

faith of, and partly in consideration of, the indemnity contract hereinafter mentioned.   By the terms of the first mentioned agreement, the defendant was to make no charge (apart from said agreement) for carrying said employees, they being allowed to ride in the cars free for the purpose aforesaid; and the plaintiff, at the time of this collision in the declaration alleged, was, in pursuance of said agreement and subject to the provisions of said indemnity contract, being carried by the defendant free of charge.   In consideration of the furnishing and hauling of said cars by said defendant, said D. Whiting & Sons paid to said defendant an agreed sum of money and executed the indemnity contract hereinafter set forth.   At the time of the execution of all the agreements herein mentioned, large quantities of milk were produced by individual farmers living along the line of said defendant's railroad.   The quantity was such that it was more economical and more advantageous to all parties —producers, distributors, and consumers—to have it transported in special cars furnished with icing facilities than to have it carried in ordinary cars.   The said D. Whiting & Sons were engaged in the business of buying and selling milk, buying it of the individual producers and distributing it at various points and at Boston on the line of said defendant's railroad.   Practically all the milk so produced along the line of said road was taken by said D. Whiting & Sons and by them distributed as aforesaid.   The defendant furnished no other special cars for the transportation of milk on said road except those furnished to said D. Whiting & Sons.   The ice used in cooling the milk during transportation was furnished and applied by D. Whiting & Sons, whose employees, riding in said cars as aforesaid, did all the work incident to caring for and handling the milk.   In and by a contract in writing (herein called the 'indemnity contract'), made and entered into by and between this defendant and said D. Whiting & Sons, and made as a part of the transaction and agreement whereby the defendant undertook as aforesaid to furnish and haul said special cars, it was provided and agreed as follows: 'In consideration of one dollar and other valuable considerations to us paid by the Boston & Maine Railroad, we, D. Whiting & Sons of Boston, Massachusetts, hereby agree to indemnify and hold harmless the Boston & Maine Railroad, its servants and agents, should any claim be made by any of our employees on account of personal injury or damage to property received while on the cars or premises of said railroad; and we further agree to indemnify and hold harmless the said Boston & Maine Railroad, its servants and agents, should any claim be made by any person on account of injury received, or by reason of any damage to property of any person, at the hands of us, or of our employees or appliances.'

"In May, 1901, the plaintiff was employed by said D. Whiting & Sons to work on said milk cars, as one of the employees of said Whiting & Sons whom the defendant under the agreement first mentioned was required to carry free, said employment being for no definite time. In September, 1901, subsequent to the making of said indemnity contract, and while the same and said agreement in relation to furnishing and hauling special cars with employees of the firm therein were in force, and pursuant thereto, the plaintiff was requested, as a condition of his continuing in the employment of said Whiting & Sons, to sign a contract in writing, herein called the 'contract of release.' Said further employment was understood by both the plaintiff and said D. Whiting & Sons to be furnished in consideration of the plaintiff's executing and delivering to the said D. Whiting & Sons this contract, which was in terms as follows: 'Whereas, as one of the employees of David Whiting & Sons, I am allowed by the Boston & Maine Railroad to ride upon its cars, and work in and about its depots, buildings, and premises, free and exempt from any charge therefor; and whereas, said David Whiting & Sons are required by said Boston & Maine Railroad to bind themselves to indemnify and hold it harmless against claims that may be made by any of their employees on account of personal injuries or damages to property received while on the cars or premises of said railroad; and whereas, I have agreed, so long as I remain in the employ of said David Whiting & Sons, to be insured against accident and death or disability therefrom, by policies of insurance issued in my favor, in part at the expense of my said employers and in part at my own expense; and whereas, it is my desire and purpose to indemnify and save harmless the Boston & Maine Railroad against liability on account of injuries that may be sustained by me in my person or property in the course of my said employment, and likewise to protect said David Whiting & Sons against all claims that may be made by said Boston & Maine over against them on account of such injuries to me: Now, therefore, I do hereby covenant and agree with said David Whiting & Sons, their successors and assigns, and also with said Boston & Maine Railroad, that for a good and valuable consideration to me paid (the receipt whereof is hereby acknowledged), and especially in view and in consideration of a contribution by said David Whiting & Sons to the premiums for my said insurance, I will not at any time hereafter make or prosecute in any manner, at law or otherwise, any claim against the Boston & Maine Railroad for or on account of injuries that may be sustained by me during the period of my employment by said David Whiting & Sons, their successors or assigns, against all liability which they are or may be under to answer over to the

Boston & Maine Railroad on account of claims made or presented by me for injuries sustained as aforesaid. In witness whereof I have hereunto set my hand and seal, as also to a duplicate hereof, this twenty-seventh day of September, 1901. Fred L. Baker.' The continuation of said employment of the plaintiff by D. Whiting & Sons was understood by the parties thereto to constitute, and the same did in fact constitute, the 'good and valuable consideration,' the receipt of which is in terms acknowledged by the said contract of release. The plaintiff continued in said employment from said September 27, 1901, to the time of the collision aforesaid. Pursuant to the agreement and indemnity contract hereinbefore referred to, it was the intention of said D. Whiting & Sons and said defendant that all employees of said D. Whiting & Sons should sign similar contracts of release, and practically all did so sign or leave said employment. The further consideration mentioned in the contract of release, namely, a contribution to premiums for accident insurance, was in fact paid by said D. Whiting & Sons according to the arrangement recited in that contract, and the plaintiff received a duly executed policy of insurance in the Fidelity and Casualty Company of New York. The policy therefor, issued originally in September, 1901, was kept alive by a premium paid annually (in part by said D. Whiting & Sons and in part by the plaintiff), and the insurance was still in force at the time of said collision.

"On the 21st of July, while in their employ, the plaintiff was severely injured, as he claims, by the negligence of the Boston & Maine Railroad, in a collision between an express train and the milk train in which the plaintiff was riding in the course of his said employment, and while he himself was in the exercise of ordinary care. Thereafter, at once and while ignorant of his legal rights, the plaintiff made inquiries as to the amount due him under said policy, and the insurance company forwarded to him a blank for proof of claim. On advice of counsel this blank was never filed with said insurance company, and said company was immediately notified that no benefits from said policy would be accepted by the plaintiff to the prejudice of his rights against said Boston & Maine Railroad, and the plaintiff then brought this suit.

"All of the agreements and contracts aforesaid were in full force and effect and binding upon the respective parties thereto at and during the time of the occurrences in the plaintiff's declaration referred to; and the plaintiff's presence at the time of said collision, in the car in which he alleges that he received the personal injuries complained of (said car being one of the special cars above mentioned), was due solely to his said

employment by D. Whiting & Sons, under the circumstances and subject to the agreements and contracts hereinbefore specified. He was then and there engaged solely in performing the duties of his said employment as one of the employees whom the defendant had agreed as aforesaid to transport free of charge. He was being transported, not as a passenger, but in virtue of said first mentioned agreement between D. Whiting & Sons and this defendant, and subject to the provisions of said indemnity contract and contract of release, respectively. The plaintiff by his said contract of release did agree that the same should inure to the benefit of this defendant, and did thereby release and discharge this defendant from all claims for liability of any nature or character whatsoever, on account of any personal injuries that he might receive while traveling over the defendant's lines of road in said employment or service. And the defendant says that because of said contract entered into by the plaintiff as a condition of his employment, and because of the agreements and release therein contained inuring to the benefit of this defendant, the plaintiff cannot maintain this action. Wherefore the defendant will claim that judgment in said action be in its favor, and for its costs."

*Taggart, Tuttle, Burroughs & Wyman*, for the plaintiff.

*Burns & Burns* and *Johnson, Clapp & Underwood* (of Massachusetts), for the defendants. It is submitted that the service which was furnished to D. Whiting & Sons was outside of and beyond anything which they had a right to demand, or which the railroad company, apart from its special agreement, was bound to supply. There is nothing in the present case to show that the defendant railroad company ever carried any milk in other than ordinary cars before its arrangement with D. Whiting & Sons, or received milk for carriage accompanied by employees of the shipper, or that it ever held itself out as ready to undertake the carriage of milk in any other way than by transit in ordinary freight cars. So far as appears, the arrangement entered into with D. Whiting & Sons was the first and only one of the kind ever made by the company.

It is clear that it was not the railroad's duty to supply the special cars referred to. Neither the common law nor any provision of statute requires it to do more than furnish ordinary cars in the transportation of milk. The case does not show that it would have been unreasonable to refuse to furnish cars provided with icing facilities, but merely that the use of such cars is somewhat more economical and advantageous. The defendant railroad has simply seen fit, in order to facilitate the distribution and market-

ing of milk, to go beyond the requirements made by the law, subjecting itself to an extra burden; and to say that it cannot, as a condition or consideration for undertaking to perform the unusual and extra service, which includes the maintenance of what is practically a traveling workshop for use of the shipper's employees, insist that the milk contractor shall indemnify the road against claims which may be made by his employees against the railroad for injuries received, is to increase the company's liability without allowing it any corresponding benefit. No public policy, we submit, can be sound which prohibits an indemnity contract under such circumstances.

In most of the decided cases which establish the general proposition that a carrier, in performing service which it is required as a carrier to perform, cannot exempt itself from the consequences of negligence, one ground on which the decisions go is that the passenger or shipper and the company do not deal on a basis of equality; the one has the other to a great extent in its power; there is no fair dealing with each other at arm's length. That element is entirely lacking in this case. In the first place, the plaintiff had no dealings with the railroad itself; he dealt solely with the obvious real defendant in the case—D. Whiting & Sons. Transportation was not the purpose of his being on the train; he was not seeking to go from one place to another; his being carried was only incidental to his presence in the car. He was there primarily to attend to his employer's business, was subject to the employer's orders, was paid by the employer, and was under the employer's sole control. Further, his position may fairly be likened to that of a Pullman porter, of which it is said in *McDermon* v. *Company*, 122 Fed. Rep. 669, that such positions are much sought for, and that in consideration of them persons are willing to agree, as a condition of their employment, to assume all risks involved in riding upon the train; and the court adds: " I can perceive no interest of public policy that should prevent him [the plaintiff] from obtaining such position on his voluntary acceptance of the conditions imposed by his employer." As was well said in *Baltimore etc. R. R.* v. *Voigt*, 176 U. S. 498: " If there is one thing more than another which public policy requires, it is that men of full age and competent understanding shall have the utmost liberty of contracting.   .   .   .   Therefore you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract."

It is obvious that it is a matter of indifference to the defendant railroad whether the contract signed by Baker is held valid or not, for the company is protected by a contract made by a responsible firm of milk contractors. The real defendant in this case is the

firm of D. Whiting & Sons, and we submit there is no sound public policy which prevents them from requiring their employees, as one of the considerations for being in the firm's service, to assume the risk involved in working in its traveling workshop. As we believe, reason and policy alike make for the validity of the Baker contract; and to avoid circuity of action that contract should be treated in the case at bar as a release inuring to the benefit of the railroad company itself.

A majority of the drover cases have been cited by the plaintiff. An examination will show that in almost every case the drover himself accompanied the cattle, that the railroad was engaged in the regular business of transporting cattle, that the cattle were carried on the regular and usual cars of the company provided for the purpose, that the rate was the regular, established rate, and that the drover was accompanying the cattle as a part of the regular and usual system of the railroad in connection with the transportation of such cattle. The release, therefore, was something demanded by the railroad in connection with the performance of its regular business of a common carrier transporting cattle. As shown, the defendant company in the case at bar never held itself out as engaged in the business of supplying special milk cars. Moreover, it seems to us that there is an obvious difference between what the shipper of live stock, which require feeding and care, and what a contractor purchasing and forwarding milk may reasonably demand of a carrier.

The decisions in the circus, express messenger, and Pullman porter cases are uniform in upholding an agreement of indemnity and release, the exemption from liability being required as a condition of furnishing services which the railroad as a common carrier is not bound to furnish. *Bates* v. *Railroad,* 147 Mass. 255; *Robertson* v. *Railroad,* 156 Mass. 525; *Hosmer* v. *Railroad,* 156 Mass. 506; *Louisville etc. Ry.* v. *Keefer,* 146 Ind. 21; *Russell* v. *Railway,* 157 Ind. 305; *Blank* v. *Railroad,* 182 Ill. 332; *Coup* v. *Railway,* 56 Mich. 111; *Chicago etc. Ry.* v. *Wallace,* 66 Fed. Rep. 506; *McDermon* v. *Company,* 122 Fed. Rep. 669; *Long* v. *Railroad,* 130 Fed. Rep. 870; *Baltimore etc. Ry.* v. *Voigt,* 176 U. S. 498.

The plaintiff has cited several cases relative to the transportation of postal clerks, but these do not involve the question raised in the present case. In these postal clerk cases the railroad claimed that inasmuch as the clerk rode free he was not a passenger, and therefore could not recover against the railroad for negligence; but the court properly held that he rode there as a part of a contract with the government, *having no provision for indemnity,* and therefore was a passenger. *Hammond* v. *Railroad,*

6 S. C. 130; *Arrowsmith* v. *Railroad*, 57 Fed. Rep. 165; *Gleeson* v. *Railroad*, 140 U. S. 435. See, also, *Seybolt* v. *Railroad*, 95 N. Y. 562; *Delaware etc. R. R.* v. *Ashley*, 67 Fed. Rep. 209.

As bearing on our contention that the service which the defendant corporation contracted to perform for the firm, which is the real defendant herein, was beyond the scope of the carrier's duty, the following observations and cases are deemed worthy of consideration: Primarily, a common carrier is not obliged to receive and transport freight on passenger trains nor passengers on freight trains. If a railroad company is asked as a part of the performance of its public duty to carry a proper person upon passenger trains, and such person agrees to release the railroad company from liability from accidents, such contract is void, because the railroad company is bound so to transport such passenger and deliver him safely. If, on the other hand, a person asks to be carried upon a freight train, ordinarily the railroad company is under no obligation so to carry him, and we submit that it is wholly consistent with good public policy to allow the carrier to demand, as a consideration for such unusual service, an agreement making the passenger under such circumstances assume all the risks of accident. See *Elkins* v. *Railroad*, 23 N. H. 275; *Murch* v. *Railroad*, 29 N. H. 9.

The defendant therefore submits that the agreement of the plaintiff—"I will not at any time hereafter make or prosecute in any manner, at law or otherwise, any claim against the Boston & Maine Railroad for or on account of injuries that may be sustained by me during the period of my employment by said David Whiting & Sons, their successors or assigns"—is not against public policy, is valid, and deprives the plaintiff of the right to recover in this action.

BINGHAM, J. The defendants are engaged in the carrying trade, as common carriers of freight and passengers. Whiting & Sons are milk contractors who buy and sell milk, buying it of the producers on the line of the defendants' road and distributing it at different points along the same. In consideration of the defendants agreeing to furnish Whiting & Sons with cars provided with icing facilities for the transportation of their milk, Whiting & Sons agreed to pay them a stipulated sum, to furnish the ice, to provide men to do the work incident to handling and caring for the milk while in transit, and to indemnify the defendants against the claims of any of the employees of Whiting & Sons "on account of personal injury or damage to property received while on the cars or premises" of the road. In view of the provisions of this contract, and in consideration of his future

employment and other considerations, the plaintiff, an employee of Whiting & Sons engaged to handle and care for the milk, agreed with Whiting & Sons not to make or prosecute any claim against the defendants on account of injuries received by him during his employment and to indemnify Whiting & Sons against all liability on account of any such claim. The plaintiff was injured through the defendants' negligence, while on their train in the performance of his duties under the contract; and the question we are called upon to consider is whether these contracts are valid and constitute a defence to this action.

The defendants say that both contracts are valid, and that they should be permitted to avail themselves of the benefits of the plaintiff's contract with Whiting & Sons to avoid circuity of action. But whether they can avail themselves of the provisions of that contract to avoid circuity of action depends upon whether their contract with Whiting & Sons is one the law will recognize and enforce. The defendants do not dispute the proposition that common carriers cannot by contract relieve themselves from liability arising from their own negligence in the performance of duties imposed upon them by law. Their first contention is, that upon the facts disclosed in the plea the shippers could not demand as of right that the defendants should furnish the cars called for in the contract for the transportation of milk; that neither the common law nor any provision of statute required them to do more than furnish ordinary freight cars for that purpose; that this service was something which they were under no public duty to perform; and that in undertaking to render it they were private carriers and could lawfully impose such terms as they deemed proper as a condition to its performance.

Were the defendants common carriers of milk? Our statutes provide that "Every railroad corporation which shall contract with any person for the transportation of milk in large quantities over any portion of its road shall establish a tariff for the transportation of milk by the can over the same portion of its railroad with fairly proportionate advantages and facilities in every respect." P. S., *c.* 160, *ss.* 21, 22, 23; Laws 1881, *c.* 81. And it would seem that when the defendants entered into the contract with Whiting & Sons, they thereupon and by force of the statute became common carriers of milk and were required to establish a tariff for its transportation. The same conclusion would be reached if we applied the principles of the common law as laid down in *McDuffee v. Railroad,* 52 N. H. 430, 454. It was there said: "A railroad corporation carrying one expressman, and enabling him to do all the express business on the line of their road, do hold themselves out as common carriers of expresses." But it is unnecessary to

further consider this question, as the defendants in their plea do not deny the allegation of the plaintiff's declaration that they are common carriers of milk, and in their brief practically concede this fact. Their contention as to this matter is simply this: that the furnishing of cars without icing facilities would have been a full compliance with their public duty as common carriers; and that Whiting & Sons, as shippers of milk, could not have required them to furnish cars with icing facilities for its transportation. In answer to this it may be said that, as incident to their business of common carriers of milk, it was the defendants' public duty to provide reasonable facilities for its reception and delivery, including care during transportation. *Flint* v. *Railroad*, 73 N. H. 141, 144; *Sayer* v. *Railroad*, 31 Me. 228; *Steinweg* v. *Railway*, 43 N. Y. 123; *Welsh* v. *Railroad*, 10 Ohio St. 65; *Beard & Sons* v. *Railway*, 79 Ia. 518, 520; *Potts* v. *Railway*, 17 Mo. App. 394; *Merchants' Dispatch Co.* v. *Cornforth*, 3 Col. 280; 2 Hutch. Car. (3d ed.), ss. 495–497; Ray Fr. Car., s. 4, and cases there cited. "A railway company is bound to provide cars reasonably fixed for the convenience of the particular class of goods it undertakes to carry. It is the duty of the carrier to provide suitable means of transportation adapted in each case to the particular class of goods he undertakes to transport. He must protect his goods from destruction or injury by the elements, from the effects of delay, from any sources of injury which, in the exercise of care and ordinary intelligence, may be known or anticipated." Ray Fr. Car., *supra*. He must "provide all suitable means of transportation and exercise that degree of care which the nature of the property requires." *Smith* v. *Railroad*, 12 Allen 531, 534. In addition to the duty imposed upon the defendants by the common law, our statutes provide that "the proprietors of every railroad shall furnish to all persons reasonable and equal terms, facilities, and accommodations for the transportation of persons and property over their railroad, and for the use of depots, buildings, and grounds in connection with such transportation." P. S., c. 160, s. 1; *McDuffee* v. *Railroad*, 52 N. H. 430, 457.

Inasmuch, therefore, as the defendants were common carriers of milk, and as it was their public duty to furnish all persons desiring to ship that commodity with reasonable facilities and accommodations for its transportation, this contention of the defendants resolves itself into the inquiry whether their plea states facts from which it can be inferred that the furnishing of cars with icing facilities was under the circumstances more than they could reasonably be required to do in the fulfilment of their public duty; for the question what facilities and accommodations were a reasonable compliance with their public duty—or, to state the proposition in another way, whether the cars furnished were more than

their public duty required them to do—is a question of fact. *Boothby* v. *Railroad*, 66 N. H. 342, 344. The plea does not allege that it would have been reasonable, in view of the defendants' public duty, for them to have refused to furnish the Whitings with cars provided with icing facilities for the transportation of the large quantity of milk which they were daily desiring to ship, nor facts from which such an inference could reasonably be made. On the contrary, it is alleged in the plea that "at the time of the execution of all the agreements herein mentioned, large quantities of milk were produced by individual farmers living along the line of said defendant's railroad. The quantity was such that it was more economical and more advantageous to all parties—producers, distributors, and consumers—to have it transported in special cars furnished with icing facilities, than to have it carried in ordinary cars." The only reasonable deduction to be made from this allegation is that cars with icing facilities were reasonably necessary, and that those furnished did not afford greater facilities than the defendants' public duty required.

It is further contended that the defendants could not have been required to carry the shippers' servants in milk cars, and that when they agreed to carry them in these cars they undertook to do more than their public duty required, and on this account could lawfully demand of the shippers the contract of indemnity which they did. But this contention is not supported by the facts in the case. As already stated, it was the defendants' duty to provide suitable cars in which to transport the milk. It was also their duty to provide men to handle and care for it while being transported. *Beard & Sons* v. *Railway*, 79 Ia. 518; *Boscowitz* v. *Company*, 93 Ill. 523; *Chesapeake etc. Ry.* v. *Bank*, 92 Va. 495; and cases above cited. But by the terms of the special contract the duty of providing men to handle and care for the milk was imposed upon the shippers; and this being so, it would not seem that the defendants were undertaking more than their public duty called for when, by the contract, they required the shippers to perform a part of their public duty—a part the performance of which necessitated the presence of the shippers' servants upon the cars. But however this may be, it is the policy of the law that common carriers should be ready and willing at all times to contract with shippers for the full performance of their public duty; and in cases where this phase of the question has been presented, it has generally been held that a contract limiting a carrier's common-law liability is unreasonable and void when transportation according to the carrier's public duty is not afforded the shipper as an alternative, and no reduction of rates is made as a consideration for the limitation. If carriers could maintain limitations or exemp-

tions of their common-law liability in cases where the shipper was not afforded the opportunity of making a contract without them, the result would be that such contracts would be universal—that the carrier's duty would be dispensed with, and the policy of the law be defeated. *Illinois etc. R. R.* v. *Insurance Co.,* 79 Miss. 114; *Louisville etc. R. R.* v. *Gilbert,* 88 Tenn. 430; *Illinois etc. R. R.* v. *Craig,* 102 Tenn. 298; *Little Rock etc. Ry.* v. *Cravens,* 57 Ark. 112,—18 L. R. A. 527, note: *Atchison etc. R. R.* v. *Mason,* 4 Kan. App. 391; *Lewis* v. *Railway,* 3 Q. B. Div. 195; Ray Fr. Car., *ss.* 45, 48, 181; 4 Elliott R. R., *s.* 1504; Redman Car. (2d ed.) 68; 6 Cyc. 392–401.

In this case it does not appear that the shippers were afforded the opportunity of having the defendants perform their full duty and handle and care for the milk. There is no allegation in the defendants' plea, or provision in the contract of shipment, to that effect; and in view of the absence of such an allegation or provision, and of the defendants' contention that they were under no duty even to provide cars with icing facilities for shipping the milk, it is to be inferred the shippers were not afforded such an opportunity, and that the defendants refused to provide the cars for the milk unless the shippers would furnish the men to handle and care for it and would indemnify the defendants against all liability for damages to the men and their property. In such case it is clear that we must hold that the shippers' contract of indemnity is unreasonable and void, and that the plaintiff's contract with the shippers, which is based upon the indemnity contract, cannot be availed of by the defendants as a defence to this action.

The plaintiff was upon the cars at the time of the accident with the defendants' consent. His passage was not free. The consideration for it was the service he rendered in caring for the milk, or the charge against his employers in shipping it. And as the defendants cannot, on the facts disclosed in the plea, avail themselves of the plaintiff's agreement with the shippers, it was the defendants' duty to use due care for the plaintiff's safety; and if they or their servants were negligent, and he was injured in consequence thereof, they are liable in damages.

Whether the agreements relied upon in the plea would have been enforceable if the defendants had been ready and willing for a reasonable compensation to perform their full duty as carriers and had afforded the shippers the opportunity of having the milk carried without restriction or limitation of their public duty, and the shippers, instead of requiring the defendants to perform their full duty, had voluntarily agreed, in consideration of a reduced rate, to furnish the men to handle and care for the milk and to indemnify the defendants against liability for loss occasioned the

person or property of the men by the negligence of the defendants or their servants, we are not called upon to decide. It may be said, however, that it has been held in this state that common carriers cannot relieve themselves from the consequences of their own wrongful acts by special contract (*Peerless Mfg. Co.* v. *Railroad,* 73 N. H. 328; *Durgin* v. *Company,* 66 N. H. 277; *Duntley* v. *Railroad,* 66 N. H. 263; *Merrill* v. *Company,* 62 N. H. 514), and that these decisions may be sustained upon the broad ground that it is against the policy of the law to permit any one, be he common carrier or not, to relieve himself by contract from the performance of his common-law duty to use ordinary care to avoid injuring those with whom he knew or should have known his business would bring him in contact. *Nashua etc. Co.* v. *Railroad,* 62 N. H. 159, 161; *Johnson* v. *Railroad,* 86 Va. 975. But whether common carriers may under some circumstances contract for a release from liability for the negligence of their servants in respect to acts which do not pertain to the performance· of non-delegable duties, is a question that has never been decided in this jurisdiction and is not now considered.

*Demurrer sustained.*

PARSONS, C. J., and WALKER and YOUNG, JJ., concurred: CHASE, J., doubted.