MISSOURI PACIFIC TRANSPORTATION COMPANY v. ELLIS.

4-8032                                    198 S. W. 2d 196

Opinion delivered December 23, 1946.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*O. A. Featherston,* for appellee.

GRIFFIN SMITH, Chief Justice. October 20, 1943, H. F. Ellis purchased at Murfreesboro, Arkansas, a Dixie Sunshine Trailways ticket, good for bus transportation to Little Rock by way of Hot Springs where connection was with Missouri Pacific Transportation Company. Ellis procured a baggage check at Murfreesboro evidencing receipt by the carrier of what was later stipulated to be an Oxford bag, which with content of clothing was worth $100.

Missouri Pacific received the bag at Hot Springs. Subsequent loss was not accounted for. On appeal from a Justice of the Peace judgment for $100, a jury was waived in Circuit Court and the same amount was awarded the plaintiff.

Missouri Pacific bases this appeal on the right it thinks was conferred upon the Corporation Commission under Act 367 of 1941 to limit liability for loss of baggage, the Commission having been directed to "establish reasonable requirements with respect to continuous and adequate service and the transportation of baggage and express." Part of Sec. 16 (a) enjoins upon carriers of passengers the duty of putting into effect just and reasonable regulations and practices relating to the issuance, form, and substance of tickets, "the carrying of

personal, sample, and excess baggage, the facilities for transportation, and all other matters relating [to] or connected with the transportation of passengers."

A stipulation is that as an incident to his ticket Ellis was given a check upon which was printed: "Dixie Sunshine Trailways, General Office. From Murfreesboro to Little Rock via Hot Springs. Baggage liability limited to $25."

Ellis did not declare a valuation greater than $25. His testimony was that he put the claim check in his pocket without looking at it. After the loss occurred, Missouri Pacific's tender of $25 was declined.

Although "Motor Carrier Act of 1941" became effective with the Governor's approval March 26th, the carriers affected did not file their Rules and Regulations until June 1, 1943. However, appellee's cause of action occurred in October of that year, so the statute had been complied with when Ellis received the baggage check.

Appellee relies upon *Southwestern Transportation Company* v. *Poye,* 194 Ark. 982, 110 S. W. 2d 494, and *Strickland* v. *Missouri Pacific Transportation Co.,* 195 Ark. 950, 115 S. W. 2d 830. Both cases were decided before the General Assembly authorized the State Commission to promulgate regulations with which we are concerned.

While the Poye case involved responsibility for loss of baggage by a motor carrier, it cites *Railway Company* v. *Cravens,* 57 Ark. 112, 20 S. W. 803, 18 L. R. A. 527, 38 Am. St. Rep. 230. Cravens sued for the value of cotton destroyed by fire after its delivery to the railroad. The bill of lading limited liability, but this Court, speaking through Mr. Justice HEMINGWAY, held that the carrier could not, by special contract, relieve itself by the restriction where the shipper was not afforded an opportunity to contract for transportation with full coverage.

In the Poye case Mr. Justice HUMPHREYS summarized the Court's views when he said that the statute

under which suit was brought "reënacted the rule at common, law relative to initial and connecting carriers," a comprehensive discussion of which is contained in the Cravens decision. In conclusion it was held in the Poye appeal that the transportation company was not relieved by regulation of the Corporation Commission, ". . . for the reason that [the Commission] has no power or authority to change the statutory rule fixing the carrier's liability at the actual value of the baggage."

The Strickland case involved acceptance by the carrier of unchecked baggage in circumstances contrary to its own rules. It was again held that the Commission's regulations did not protect the defendant.

*Missouri Pacific Transportation Company* v. *Williams*, 207 Ark. 750, 182 S. W. 2d 762, deals with bailor and bailee. It was held that failure of the bailee to call the bailor's attention to restrictive conditions on a claim check did not deprive the transaction of contractual characteristics—this because the bailor was charged with knowledge of what the receipt recited.

Since we have held that the common law liability of a carrier may be limited by contract if supported by a consideration, we do not know of any fundamental inhibition that would prevent the General Assembly from directing a commission of its own creation to prescribe rules if the rules are not legislative, but merely measures in the administrative plan the lawmaking body thought necessary to public welfare.

Rules eight and nine, Local and Joint Baggage Tariff No. 500-F, are copied in the margin.[1] It will be ob-

Rule 8—Free Baggage Allowance.
  (a) Except as noted below and subject to limitations shown in Rules 5, 6 and 7, 150 pounds of baggage or property not exceeding $25.00 in value, may be checked without additional charge for each adult passenger and seventy-five (75) pounds not exceeding $12.50 in value, for each child traveling on a half fare ticket.

Rule 9—Charges for Baggage of Excess Weight and/or Value.
  (c) EXCESS VALUE: Unless a greater value is declared by a passenger and charges paid for excess value at time of delivery to carrier, the value of property belonging to, or checked for a passenger, shall be deemed and agreed to be not in

served that provision is made for greater valuations (and for recovery to the extent of such declaration, or actual value) if the worth of the baggage tendered is stated, and ten cents is paid for each additional $100.

We think the Legislature intended by its 1941 Act to invest the Commission with regulatory authority; and while the Commission could not adopt a rule in conflict with statutory provisions requiring transportation of baggage, it could delegate purely ministerial acts. The paramount question is, Did Act 367 repeal Sec. 1173 of Pope's Digest requiring that "All carriers of passengers in this State shall transport and carry the baggage of passengers, weighing not more than 150 pounds, free of charge"?

The section is a part of Act 252, approved May 4, 1911. By its terms all common carriers of passengers are included. Since 1911, however, a tremendous increase in motor vehicle transportation has developed, involving new and complex problems. Seemingly it was the legislative purpose to deal exclusively with this class of service; hence the Motor Carrier Act.

This construction is strengthened by Sec. 2, which declares that it is necessary to the public interest ". . . to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers; promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor." Other purposes mentioned are development and preser-

---

excess of the amounts specified in Rule 8, and carriers parties to this tariff will not accept liability for a greater sum in case of loss or damage.

(d) If passenger declares, according to the form prescribed by checking carrier, a greater value than specified in Rule No. 8, there will be a charge, at the rate of ten cents for each additional $100.00 valuation, or fraction thereof, total valuation not to exceed limitations in Rule 7. (See Exception No. 1). The minimum charge for excess value will be ten cents (10 cents).

(e) Charges for excess value must be prepaid and are separate and distinct from the charges for excess weight.

vation, of a highway transportation system adapted to the needs of Arkansas commerce.

The 1941 measure covers approximately thirty printed pages of the Fifty-Third General Assembly Acts. It deals at length with motor carriers as distinct from railways, and it authorizes the Commission in the broadest sense to regulate intrastate transportation of passengers, baggage, freight, and express. This being true, it follows that the Act of 1911, passed at a time when travel was mostly by rail, has been superseded in respect of motor transportation.

The Judgment is reversed with directions to limit the recovery to $25.

Mr. Justice ROBINS and Mr. Justice MILLWEE dissent.